UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

M. ANGELICA CONEJO,                    ) NO. ED CV 10-706-AS
                                       )
               Plaintiff,              ) **MEMORANDUM OPINION AND**
                                       )
          v.                           ) **ORDER OF REMAND**
                                       )
CAROLYN W. COLVIN, Acting              )
Commissioner of Social                 )
Security,                              )
                                       )
               Defendant.              )
                                       )
_____

**PROCEEDINGS**

     On May 27, 2010, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for disability benefits and supplemental security income ("SSI").   (Docket Entry No. 4).  On April 14, 2011, pursuant to the parties' stipulated remand, the Court remanded this case for further administrative proceedings, and retained jurisdiction pursuant to sentence six of 42 U.S.C. § 405(g).  (Docket No. 15).  After the proceedings on

1

remand resulted in a decision unfavorable to Plaintiff, on May 2, 2013, the parties stipulated to reopen the matter (Docket Entry No. 16), and the Court ordered the case reopened (Docket Entry No. 17).

On August 9, 2013, Defendant filed an Answer and the Administrative Record ("A.R."). (Docket Entry Nos. 19, 20). On August 21, 2013, the matter was transferred and referred to the current Magistrate Judge. (Docket Entry No. 21). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 23-24). On January 14, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claims. (Docket Entry No. 25). On August 25, 2014, pursuant to the Court's request, Defendant supplemented the Administrative Record. (Docket Entry Nos. 34, 35). The Court has taken this matter under submission without oral argument. See C.D. Local R. 7-15; "Case Management Order," filed June 2, 2010. (Docket Entry No. 2).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former sales clerk-cashier (A.R. 250), asserts disability beginning January 1, 2004, based on alleged physical and mental impairments. (Id. 10, 132). The Administrative Law Judge, Michael D. Radensky ("ALJ"), examined the record and heard testimony from Plaintiff and vocational expert ("VE"), David A. Rinehart, on January 3, 2012. (Id. 245, 258-95).

On January 18, 2012, the ALJ issued a decision denying

2

Plaintiff's application for benefits. (Id. 245-51). The ALJ found that Plaintiff has the "severe combination of impairments" of obesity, fibromyalgia, and depression. (Id. 248). The ALJ also determined that Plaintiff's medically determinable impairments of depression and obesity were nonsevere as they did not cause more than minimal limitation in her ability to perform basic mental work activities. (Id. 246, 248). The ALJ determined that, notwithstanding these impairments, Plaintiff assertedly retains the residual functional capacity ("RFC") to perform the full range of light work and that she is able to perform her past relevant work as a sales clerk-cashier. (Id. 249-50).

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date through the date of the ALJ's decision. (Id. 250).

## PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred: (1) in his assessment of Plaintiff's credibility; (2) in failing to properly evaluate Plaintiff's mental impairment; and (3) by incorporating by reference a prior decision vacated by the Appeals Council, thereby violating the Appeals Council's remand order. (Joint Stip. 3-4).

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial

3

evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not

4

substitute its judgment for that of the [Commissioner]." <u>Reddick</u>, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

## APPLICABLE LAW

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)).  The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability.  20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity.  <u>Id.</u> § 404.1520(a)(4)(i).  "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for pay or profit."  <u>Id.</u> §§ 404.1510, 404.1572.  If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities.  <u>See id.</u> § 404.1520(a)(4)(ii); <u>see also Webb</u>, 433 F.3d at 686.  The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most

jobs." 20 C.F.R. § 404.1521(b);  Webb, 433 F.3d at 686.  An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities."  Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled.  Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding.  Webb, 433 F.3d at 686.  If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all his impairments.  20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date.  If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ

proceeds to step five to determine whether – taking into account the claimant's age, education, work experience and RFC – there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v).  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Tackett, 180 F.3d at 1098.

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are *not* supported by substantial evidence or free from material[1] legal error.  For the reasons discussed below, the case is remanded under sentence four of 42 U.S.C. Section 405(g).

**A.   The ALJ Materially Erred in Evaluating Plaintiff's Credibility**

Plaintiff asserts that the ALJ erred in assessing Plaintiff's credibility because he failed to "utilize the techniques outlined by the Ninth Circuit for determining credibility," made statements that are inconsistent with the medical record, and failed to provide specific, clear, and convincing reasons for challenging

---

[1]     The harmless error rule applies to the review of administrative decisions regarding disability.  See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

Plaintiff's credibility.    (Joint Stip. 5-7).    Plaintiff also
contends that "the ALJ limited his analysis" to Plaintiff's
"purported ability to walk, her poor effort on one consultative
grip test," her failure to fully describe the intensity of her
fatigue to her physicians, and inferred that she was malingering.
(Id. 11).

The ALJ noted Plaintiff's testimony as follows:

> [S]he testified . . . that she had to lay down and
> nap four to six times a day on a regular basis for a half
> to two hours at a time because of her pain although she
> also complained of being unable to sleep at night because
> the medication for sleep no longer helped her.  However,
> she stressed that her medication made her sleepy and how
> she was seeing a pain management specialist on a monthly
> basis for epidural injections as well as other shots in
> the areas where she has pain.  [¶] . . . The claimant
> reportedly admitted substantial improvement of her pain
> with each injection as well as reporting relief of pain
> with her medication, which included Vicoprofen and
> Robaxin, and there was no indication of any complaints of
> medication side effects.  [¶] . . . The medical evidence
> of record like her prehearing statements and hearing
> testimony does reflect complaints of pain all over her
> body, but the record does not support the degree of
> limitations alleged.  She has said that her family does
> everything for her, but it is clear that she was overly

8

dramatic at the hearing, and in fact livened up a bit
when talking about things she liked.  She admitted that
she drove her daughter to school sometimes and helped
with homework, but otherwise maintained that her husband
and son took care of everything for her.

(A.R. 250).

Where, as here, the ALJ finds that a claimant suffers from a
medically determinable impairment that could reasonably be expected
to produce his or her alleged symptoms, the ALJ must evaluate "the
intensity, persistence, and functionally limiting effects of the
individual's symptoms . . . to determine the extent to which the
symptoms affect the individual's ability to do basic work
activities.  This requires the [ALJ] to make a finding about the
credibility of the individual's statements about the symptom(s) and
its functional effect."  Soc. Sec. Ruling ("SSR") 96-7p.

An ALJ's assessment of a claimant's credibility is entitled to
"great weight."  Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th
Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).
The ALJ may not discount the claimant's testimony regarding the
severity of the symptoms without making "specific, cogent"
findings.  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995); see
also Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010)
(reaffirming same); but see Smolen, 80 F.3d at 1283-84 (indicating
that ALJ must provide "specific, clear and convincing reasons to
reject a claimant's testimony where there is no evidence of

malingering); see Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).[2]   Generalized, conclusory findings do not suffice.   See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also SSR 96-7p.

An ALJ may consider a range of factors in assessing credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's

---

[2]   In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.  See, e.g., Chaudhry v. Astrue, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Comm'r, 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine v. Comm'r, 574 F.3d 685, 693 (9th Cir. 2009); Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases).  As set forth infra, the ALJ's findings in this case are insufficient under either standard, so the distinction between the two standards (if any) is academic.

1  daily activities." <u>Ghanim v. Colvin</u>, --- F.3d ----, 2014 WL

2  4056530, at *7 (9th Cir. Aug. 18, 2014) (quoting <u>Smolen</u>, 80 F.3d at

3  1284; <u>accord</u> <u>Orn v. Astrue</u>, 495 F.3d 625, 636 (9th Cir. 2007)).

4

5       Here, the ALJ, after considering the record and the testimony

6  presented at the hearing, found Plaintiff's statements concerning

7  the intensity, persistence and limiting effects of her symptoms

8  "not credible to the extent they are inconsistent with" the ALJ's

9  RFC. (A.R. 249).

10

11          Contrary to her testimony, the medical records

12      reflect good response to medication, and there is no

13      clinical evidence of any problems with standing, walking

14      or sitting, but rather repeated reports of no apparent

15      distress and no problems with walking or anything more

16      than some tenderness over her spine without any muscle

17      spasm, sensory or motor changes, or limitation of spinal

18      motion. Her medications are consistent with only mild to

19      moderate pain, there are repeated references to good

20      response to medication without medication side effects,

21      and there is certainly no mention of the alleged frequent

22      need for naps of up to two hours at a time.

23

24  (<u>Id.</u> 250).

25

26      Thus, the ALJ discounted Plaintiff's credibility for the

27  following reasons: (1) the objective medical evidence does not

28  fully support either the degree of limitation, or the degree of

                                    11

pain and fatigue alleged by Plaintiff; (2) there were internal inconsistencies in Plaintiff's complaints; and (3) treatment and conservative medications provide relief. (Id.).

The Court finds that the ALJ failed to state legally sufficient reasons for his adverse credibility finding.

### 1.   Objective Medical Evidence

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).   Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility.   See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (in determining disability, an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of her symptoms "in relation to the objective medical evidence and other evidence").

Here, the ALJ discounted Plaintiff's credibility based in part on a finding that the objective medical evidence does not fully support the degree of limitation alleged by Plaintiff. (Id. 250). The ALJ noted that there is "no clinical evidence" of any problems standing, walking, or sitting, and repeated reports of "no apparent distress and no problems with walking or anything more than some tenderness over her spine without any spasm, sensory or motor changes, or limitation of spinal motion." (Id.).   He also found

that the medical records do not reflect the degree of pain and fatigue alleged by Plaintiff. (Id.).

The ALJ and Defendant also point out that (1) the reports of Plaintiff's treating physician, Dr. Loomba, reflect normal range of motion, normal muscle strength, normal sensation, and negative straight leg raising tests (A.R. 250; Joint Stip. 8 (citing A.R. 405, 407, 410, 413, 417)); (2) the internal medicine consultative examiner and the orthopedic examiner both opined that Plaintiff could work with some limitations, finding only mild objective findings (Joint Stip. 8 (citing A.R. 146-50, 390-94)); (3) the consultative examiners also noted no problem with walking and/or sitting (id. (citing A.R. 148, 263-64, 391)); and (4) Plaintiff's physicians generally reported no difficulties in walking (id. (citing A.R. 168, 173, 178, 181, 185).[3]

A review of the record, however, reveals that the ALJ's findings only reflect part of the record. For instance, a November 17, 2011, note from an urgent care visit for a headache, seems to possibly indicate that Plaintiff's heel walking and toe walking were abnormal. (A.R. 449). Dr. Loomba also consistently mentioned that on examination of Plaintiff's back and neck, Plaintiff had "tenderness in cervical paraspinal muscles," and "tenderness in lumbar paraspinal muscles, increased pain with flexion of the

---

[3] The Court's review of the record reveals that only one of the cited documents actually mentions an assessment of Plaintiff's gait and stance. (See, e.g., A.R. 168 ("Gait And Stance: Normal.")). The other pages that are cited do not mention walking at all. (See, e.g., A.R. 173, 178, 181, 185).

spine, [and] increased pain with extension of the spine." (Id. 405, 407, 410, 413, 417; see also id. 420, 422, 424, 428, 432, 436, 438, 440). The Court finds itself ill equipped to determine which, if any, of Dr. Loomba's clinical findings are or are not significant in light of Plaintiff's impairments. Indeed, in the context of fibromyalgia the Ninth Circuit has recognized that objective findings often "do not establish the presence or absence of [the disease]." Jordan v. Northrop Grumman Corp., 370 F.3d 869, 872 (9th Cir. 2003), overruled on other grounds by Abatie v. Alta Health & Life Ins., 458 F.3d 955, 970 (9th Cir. 2006) (en banc). In Jordan, the court recognized that objective tests are administered to rule out other diseases and alternative explanations for the pain, but do not themselves establish the presence or absence of fibromyalgia, as that condition cannot be objectively proven. Id. at 877.

The ALJ also found that the record does not support the degree of fatigue alleged by Plaintiff as there was no mention in the medical record of Plaintiff's frequent need for naps. (A.R. 250). A review of Dr. Loomba's records, however, shows that Plaintiff complained of fatigue at every visit. (See, e.g., id. 404, 406, 409, 412, 416, 417, 419, 421, 427, 429, 437). More importantly, the records reflect that after treating Plaintiff for almost six months, Dr. Loomba prescribed Provigil in October 2009. (Id. 433). According to its official website, Provigil is "used to improve wakefulness in adults who experience excessive sleepiness . . . ." Provigil Website, http://www.provigil.com (last visited August 22, 2014). It appears, therefore, that Dr. Loomba was aware of

Plaintiff's complaints of daytime fatigue and concerned enough about these complaints to prescribe a medication to help Plaintiff stay awake.

Thus, the ALJ's reliance on the objective medical evidence in this case was not a clear and convincing reason for discounting Plaintiff's credibility.   Even if the ALJ's reliance on the objective evidence was deemed to be a clear and convincing reason for discounting Plaintiff's credibility, it cannot be the sole legally sufficient reason.   As discussed below, because the Court finds that the other reasons given by the ALJ for discounting Plaintiff's credibility are also not legally sufficient, the matter must be remanded.

### 2.    Inconsistent Statements

The ALJ pointed to inconsistencies in Plaintiff's complaints as a basis for discounting Plaintiff's credibility.   For example, although Plaintiff testified that because of her pain she had to nap and/or rest four to six times a day for up to two hours at a time, she also complained that she was unable to sleep at night because her sleep medication no longer helped her.   (A.R. 249; but see id. 447 ("no sleep complaints").   Although she complained she was unable to sleep at night because her sleep medication no longer helped her, she also complained that her medication made her sleepy.   (Id. 249-50).

Inconsistencies in a claimant's testimony are a valid factor

to be considered in weighing a claimant's credibility.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002); <u>Burch</u>, 400 F.3d at 680 ("In determining credibility, an ALJ may engage in other techniques of credibility evaluation, such as . . . inconsistencies in claimant's testimony"); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1148 (9th Cir. 2001) (claimant's inconsistent statements were specific and convincing reason for discounting the testimony); <u>see also</u> 20 C.F.R. §§ 404.1529(c), 416.929(c).

In this case, however, Plaintiff's statements regarding fatigue, frequent napping/resting during the day, and inability to sleep well at night are not necessarily inconsistent:  pain may necessitate rest during the day, result in napping and, in turn, result in difficulty sleeping at night either because of prior daytime sleep, or because of pain interrupting sleep at night. Additionally, as previously discussed (<u>see</u> Discussion <u>supra</u> Part A.1), although Dr. Loomba's records do not specifically mention Plaintiff's frequent naps/rests during the day, it is clear that Dr. Loomba was aware of Plaintiff's daytime fatigue, and was treating this symptom with medication.

Accordingly, the ALJ's reliance on Plaintiff's inconsistent statements is not supported by the record and is not a clear and convincing reason to discount Plaintiff's allegations.

///
///
///

16

### 3.   Conservative Medication and Positive Response to Treatment

The ALJ noted that Plaintiff's medications were "consistent with only mild to moderate pain," her medications and other treatment provided her pain relief, and there was no indication of any complaints of medication side effects. (A.R. 250 (citing id. 404-41)).

However, a review of Dr. Loomba's records reveals that as of July 2011 Plaintiff was taking three different prescribed pain medications: Gabapentin, Robaxin, and Vicoprofen. (See, e.g., id. 404; see also id. 308). There is nothing in the record to support the ALJ's perfunctory statement that these medications are prescribed for "only mild to moderate pain," especially in light of the fact that all three were being prescribed at the same time. Furthermore, over the course of the time that she treated Plaintiff, Dr. Loomba not only adjusted Plaintiff's pain and sleep/wakefulness medications, but also suggested additional treatment options of lumbar and cervical injections in order to help Plaintiff better manage her pain.[4]   (Id. 404-41).

Although the ALJ reported that Plaintiff experienced relief from her medications and other treatments, there is no indication in the record that such relief was inconsistent with her testimony.

---

[4]   The ALJ only found the medication regimen to be "conservative"; he does not appear to deem the spinal injections to be a conservative form of treatment.

On numerous visits to Dr. Loomba between June 15, 2009 and July 12, 2011, Plaintiff reported that her pain is relieved by "medications, rest," massage, heat and/or epidural injections, that the pain medications are helping, and/or that after receiving injections in September 2009, November 2009, September 2010, February 2011, and March 2011, there was a decrease in pain, ranging between 30 and 80%. (See, e.g., id. at 404, 406, 409, 412, 416, 419, 421, 427, 431, 433, 435, 437).  However, at each of her visits, Plaintiff also fairly consistently rated her average pain between 7/10 and 10/10, and there is nothing to suggest that she was ever without pain, even after receiving the injections.  (Id.).  Additionally, Plaintiff continued to periodically receive these injections, which suggests that any benefit from them was not long lasting.

Plaintiff also repeatedly informed Dr. Loomba that her pain symptoms were aggravated by physical activity, including movement, sitting, standing, and walking.  (Id. 404, 406, 409, 412, 416, 417, 419, 421, 427, 429, 437).  She consistently described her pain to Dr. Loomba as burning, dull aching, constant, sharp, shooting, and radiating, and sometimes with cramping or numbness.  (Id.)  These statements are consistent with her testimony at the hearing.  (See, e.g., id. at 261-63).

The ALJ discounted Plaintiff's credibility because she did not report any side effects from her medications.  In assessing a claimant's credibility about her symptoms, an ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c).  However, in this case, there does not

appear to be any connection between the ALJ's finding that Plaintiff takes her medication without any reported side effects, and Plaintiff's credibility.

Thus, the Court finds that, when read as a whole, the record in this case does not undermine Plaintiff's testimony of pain and fatigue. Ghanim, 2014 WL 4056530, at *8. Rather, the record consistently reveals that despite some occasional signs of improvement, Plaintiff continues to suffer from, and be treated for, pain, fatigue, and sleep disturbances. The Court also finds that the ALJ's stated reasons for discounting Plaintiff's credibility do not sufficiently allow the Court to conclude that the ALJ discounted Plaintiff's credibility on legally permissible grounds.

**B.   Plaintiff's Mental Impairments Should Be Reconsidered on Remand**

The ALJ noted that, with respect to Plaintiff's mental impairment, Plaintiff has had "little treatment for her varying complaints of anxiety and depression and that they responded quickly to medication." (A.R. 248 (citing id. 164, 167-68, 172, 177, 180, 184, 188, 190)).[5]   He found that although Plaintiff

---

[5]   The Court's review of these documents reveals that some of the cited pages do *not* fully support the ALJ's finding. For instance, one treatment note never mentions Plaintiff's medications and reflects only a routine visit for sinusitis (A.R. 177), and another reflects that Plaintiff reported insomnia, decreased interest, increased feelings of worthlessness, decreased energy, (continued...)

stated at the hearing that she is very depressed, she has not received any formal mental health treatment and there is "even less evidence of depression and anxiety than at the time of the prior decision in 2003." (Id.).   Therefore, the ALJ concluded that Plaintiff's mental impairment causes no more than mild limitation in concentration, persistence, or pace, and that "even in conjunction with her medically determinable physical impairments," is nonsevere and non limiting in terms of mental functioning. (Id.).

Plaintiff contends that the ALJ erred in failing to properly evaluate Plaintiff's mental impairment and that the ALJ's finding that her depression was nonsevere is not supported by substantial evidence.   (Joint Stip. 12).   In support of this contention, Plaintiff cites to many of the same medical records that the ALJ identified as indicating diagnoses or assessments of depression and anxiety due to chronic muscle/joint pain, and accompanied by sleep disturbance.   (Id. (citing A.R. 167, 168, 172, 180, 183, 184, 188, 189, 403, 410, 413, 417, 440)).   Plaintiff also points out that she has been, and is being, treated for depression with medications.[6]

[5](...continued)
increased difficulty in concentrating, and anxiety attacks (id. 190).

[6]   The record reflects that in 2007 a physician's assistant noted Plaintiff's complaints of depression, resulting in fatigue. (Id. 166-68, 172-88).   Plaintiff was treated with Cymbalta, and reported that it "helped her significantly." (Id. 172, 180, 184). Some of these same notes, however, also indicate that Plaintiff still feels "very anxious," paranoid, and depressed (see, e.g., id.
(continued...)

(Id.).

As this case is being remanded for the ALJ to reconsider Plaintiff's credibility, which in turn may support Plaintiff's complaints regarding her mental impairments, the Court does not reach the merits of Plaintiff's claim that the ALJ erred in finding Plaintiff's mental impairments to be nonsevere.  The Court will instead direct this issue to be reassessed on remand.

**C.   The ALJ's Incorporation of the Prior Decision Was Not Error**

After this Court remanded the matter pursuant to the parties' stipulation, the Appeals Council vacated the 2008 decision and remanded the matter "for a new hearing, any further action to complete the record and a new decision." (A.R. 316).  In his 2012 decision, the ALJ noted that "the prior decision issued April 8, 2008 is incorporated by reference herein and remains the decision of record as supplemented herein below."  (Id. 246).

Plaintiff contends that the 2012 decision was inconsistent with the remand order because the ALJ did not make a new decision,

---

(...continued)
172, 180), and it appears that her Cymbalta dosage was increased as a result (id. 173).  Dr. Loomba's records show that from July 2009 through August 2010 Plaintiff was taking Elavil and Fluoxetine (Prozac) (id. 437), and Plaintiff's December 2011 list of medications includes Prozac, but not Elavil, as a current medication as of that date (id. 388).  On November 22, 2011, Plaintiff reported to treating physician, Dr. Lopa, that her mood was stable on Prozac.  (Id. 445).

he merely reiterated the old decision. (Joint Stip. 17). The Court does not agree.

After reviewing the record, the Court finds that, although the ALJ referenced the previous decision and incorporated it by reference, his decision was otherwise complete in and of itself at every step of the evaluation process. (A.R. 245-51). The ALJ included a complete discussion of the fact that there was little or no change in the nature and severity of Plaintiff's medically determinable impairments since 2003, including her obesity, which had not been mentioned in the 2003 decision. (Id. 246). He also considered and discussed the new medical evidence submitted for the hearing as well as some of the earlier medical evidence. (Id. 245-51). Finally, the ALJ provided a thorough (albeit flawed) discussion of Plaintiff's credibility.

Generally, it is not improper for an ALJ to incorporate a previous decision and supplement it with a subsequent decision. See, e.g., Walker v. Astrue, No. EDCV 08-971 DSF (FFM), 2010 WL 2305849, at *11 (C.D. Cal. June 4, 2010) (citing Mason v. Astrue, No. ED CV 08-240-E, 2008 WL 4382662, at *2 (C.D. Cal. Sept. 11, 2008)). Moreover, it would elevate form over substance to require an ALJ to actually copy the past findings, rather than incorporate them by reference, especially where, as here, the remand was due to an administrative issue involving a missing document and did not relate to any concerns regarding the substantive issues in the ALJ's 2008 decision. See, e.g., Alsyouf v. Astrue, No. EDCV 11-

1867-SS, 2013 WL 327794, at *12 (C.D. Cal. Jan. 29, 2013).

The Court finds that the ALJ did not err or violate the Appeals Council's order by issuing a new decision, which happened to incorporate the 2008 decision, after conducting a new hearing.

**D.   Remand Is Appropriate**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where, as here, the circumstances of the case suggest that further administrative review could remedy the ALJ's errors, remand is appropriate. McLeod, 640 F.3d at 888 (9th Cir. 2011); Harman, 211 F.3d at 1179-81.

The Court has determined that the ALJ's credibility findings were not sufficiently specific to allow this Court to conclude that the ALJ rejected Plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony. After reassessing Plaintiff's credibility on remand, the ALJ should revisit the issue

of Plaintiff's mental impairment in light of his credibility determination.

**CONCLUSION**

For all of the foregoing reasons,[7] this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  August 27, 2014.

/s/
_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

---

[7]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the payment of benefits would not be appropriate at this time.

24